28140. STATE LIFE INSURANCE CO. *v.* LANKFORD *et al.*

DECIDED JULY 16, 1940. REHEARING DENIED JULY 31, 1940.

*Milton W. Mangus, Kelley & Dickerson,* for plaintiff in error.

*Hull, Barrett, Willingham & Towill, John S. Gibson, W. C. Lankford,* contra.

MACINTYRE, J. This is the second appearance of this case before this court. *Lankford* v. *State Life Insurance Co.* 57 *Ga. App.* 626, 635 (195 S. E. 907). The petition is substantially the same as it was in the first appearance. However, paragraph 14 of the petition was amended after the first appearance, and now fails to allege that the plaintiff tendered the amount of the loan interest in November, 1933. For the sake of brevity and to prevent unnecessary repetition, we refer the reader to the former report of this case for a statement of the petition. On the former hearing this court ruled: "No provision for forfeiture being shown by the record, it must be held that the policy did not lapse on June 8, 1933, the last day of the grace period, but that it continued in force according to its terms. . . Moreover, assuming that the policy in fact contained a provision for forfeiture for non-payment of premiums, whether or not the retention of the notes by the insurance company for fifty-two days after June 8, 1933, amounted to a

waiver of forfeiture was a question for the jury." The jury returned a verdict against the insurance company, and the present bill of exceptions contains only the general grounds. The only question is whether the evidence authorized the verdict. The policy provided, in part: "One month's grace. One month's grace, during which time this policy will be continued in force, will be allowed in payment of all premiums after the first year, subject to an interest charge of five per cent. per annum. . . Premiums. In case any premium should not be paid when due, according to the terms of this contract, at the office of the company in the City of Indianapolis, or to agents when they produce receipts signed by the President or Secretary, then and in every such case this policy shall cease and determine, except as otherwise herein expressly provided. . . Authority. Only the President, Vice-President or the Secretary has power in behalf of the company to make or modify this or any contract of insurance or to extend the time for paying any premium, and the company shall not be bound by any promise or representation heretofore or hereafter given by any person other than the above. . . Notices. The insured should give prompt notice to the company of any change of residence or post-office address. Notice of each and every payment due or to become due hereon at the date named is given and accepted by the delivery and acceptance of this policy, and any further notice required by any statute is hereby expressly waived." Each of the premium extension notes contained the following provisions: "I understand and hereby agree that neither this note nor any extension thereof is given or accepted as a payment of said premium. And I agree that the non-payment of this note, or any extension thereof, at maturity shall ipso facto lapse said policy, and there will be due the proportionate part of said premium (with interest, less any payments made on said premium) that the time from the date to the maturity of this note, or any extension thereof, bears to the whole time covered by said premium. I also agree that upon non-payment of this note, or any extension thereof, if said policy should have any reserve value the company may charge the proportionate part of this note, or any extension thereof, that may be due as above provided, against such reserve value and any extended insurance value it may have shall be accordingly reduced."

With reference to the loans the policy provided: "Cash loans

can be obtained on the sole security of this policy on any anniversary of its date after the first, or within thirty days thereafter, this policy being in force and all premiums having been duly paid, to the amount fixed in the column of loan values in the table of options on the face of this policy. Applications for loans must be made in writing by the insured to the home office of the company, and the loan will be subject to the terms of the company's loan agreement. Interest at the rate of five per cent. per annum in advance will be charged. The amount of loan available includes any previous loan unpaid." Among other things, the company's loan agreement dated February 16, 1933, which was signed by the insured, provided: "That interest in advance at the rate of five per cent. per annum shall be paid upon said loan from the date of said loan to the next anniversary of said policy, to wit, the 8th day of May, 1933, and annually in advance thereafter, at the home office of the company, and if not so paid will be added to the principal and bear the same rate of interest. Note. Interest is payable in advance; but in case said loan is repaid, interest will be charged only to the date of repayment, and any excess paid will be refunded. In case of the death of the insured, interest will be charged only to the date of the approval of proofs of death, and any excess paid will be refunded. . . That in the event that the total indebtedness upon said policy shall equal or exceed the amount loanable thereunder, upon failure to repay said loan or interest thereon the policy shall immediately cease and become void, provided thirty-one days notice shall have been mailed by the company to the last known address of the insured and assignee, if any." It should therefore be borne in mind that there were two separate means by which these policies could become terminated. One was the failure to pay the premium or to secure an agreement for extension of the time for the payment of the premium. The other was the failure to pay the loan and interest upon the notice provided in the loan agreement as set forth above.

It appears from the evidence that the insured, Mr. James S. Lott, was the father-in-law of W. C. Lankford, one of the plaintiffs in this case. At the time of the alleged forfeiture the policies in question had been in force for approximately twenty-eight years, or since May 8, 1905, and the insured had been paying interest on the loan since at least 1923, or for approximately ten years. The

transactions with reference to the policies other than the formal signings by Mr. Lott were handled by Mr. Lankford, as he styles himself, "agent for Mr. Lott." Mr. Lankford, therefore, was in charge of the payment of the premiums for approximately ten policy years preceding the premium which fell due on May 8, 1933. During this ten-year period certain letters were written with respect thereto, and the loan on the policy and these letters were introduced in evidence. In January and February, 1933, there was a further loan, by which the full loan value on these policies up to May 8, 1933, was borrowed, namely $3120 on each policy, the date of the loan being February 15, 1933, being an increase of an old loan which started about 1923. Following the receipt of the notices that the premiums and interest were due May 8, 1933, Mr. Lankford, on May 29, 1933, wrote the following letter to the insurance company: "On the 8th day of June, the days of grace will expire on two policies on the life of James S. Lott of Douglas, Ga., my father-in-law, on which I have been paying premiums. I retired from Congress March 4, and will not get another position before June 1st, with first salary to come in later. I am therefore most anxious for the chance to make smallest possible cash payment on June 8th, with notes executed by Mr. Lott for balance. Please send me here note for execution, advising me just how small a cash payment you care to accept. Make extension notes for only 30 or 60 days if necessary, in order to accept small cash payment." In answer to this letter the insurance company wrote, on June 1, 1933, as follows: "This will acknowledge receipt of your letter of May 29th, with regard to the above-numbered policies. Enclosed you will find, for the signature of Mr. James S. Lott as the insured, two notes for $164.88, each covering the annual premiums due May 8th, 1933. The loan interest which totals $312 for the two policies can not be included in the note extensions; and inasmuch as the full 28th-year loan values have already been withdrawn, it will be necessary that the loan interest be paid in cash. Assuring you it is a pleasure to arrange these extensions for you, and anticipating return of the properly executed notes together with your required remittance of $312 on or before grace will expire June 8th, I remain," etc.

The policies were issued under the date of May 8, 1905, and the full loan value as of the 28th year was as of May 8, 1933. On June

3, 1933, Mr. Lankford wrote to the insurance company as follows: "I am in receipt of your favor of June 1st, 1933, in reference to above-mentioned policies, and will return before the 8th instant [of June, 1933, the end of the grace period] the notes properly executed. Unless I am able to borrow some money, which now appears impossible, I shall not be able to pay the $312 interest on the loan of June 8th. I am getting employment beginning next week, and can make curtailment of this interest every 30 days. Please write me the very best that can be done in this respect. Thanking you for any courtesy you may show me in this respect, I am," etc. On June 6th, 1933, Mr. Lankford wrote to the insurance company as follows: "Enclosed notes as per your letter of 1st instant, concerning policies of James S. Lott, of Douglas, Ga." It further appears from the evidence that the notes lay in the files of the company until July 29, 1933, on which date the company wrote Mr. Lankford as follows: "Sometime ago you forwarded premium notes signed by Mr. Lott in connection with the premiums due on his policies May 8, 1933, and stated that you would be able to make the necessary cash payment a little later. No remittance has been received, and I am therefore returning the notes which can not be used without the cash payment." On August 29, 1933, formal notice of the lapse of the policies was mailed to Mr. Lott. On September 20, 1933, Mr. Lankford wrote to the company as follows: "Please write me status of insurance of James S. Lott, of Douglas, Ga., what will have to be done to keep insurance in force, and send proper blanks for this purpose. I want to keep this insurance in force if I can conveniently do so. I now have permanent small salary as associate attorney Bureau of Internal Revenue here. If possible, work out a monthly-payment plan whereby this insurance can be saved. If present premium was paid, would loan value carry accrued interest? Can interest be paid in monthly installments with premiums to be carried to later date? Please suggest best possible arrangement to handle matter on small salary." On September 28, 1933, the insurance company in effect told him that a reinstatement of the policies would require the payment of a considerable amount, $230.23 on each policy, and the insured would have to submit to a medical examination made by one of the company's regular examiners. On November 3, 1933, Mr. Lott (we assume through Mr. Lankford) wrote the following letter to

the company: "Enclosed in cash please find $339.68 in full settlement of two notes each dated May 8, 1933, and in settlement of the premiums due May 8, 1933, on two policies numbers 141884-5 on my life for $5000 each. Please make proper acknowledgment of these payments by return mail." On November 6, 1933, the insurance company returned the money to Mr. Lott, stating they could not accept it because the insured had not complied with their proposition, stated in letter dated November 1, 1933. James S. Lott died at Douglas, Georgia, on November 25, 1935, two years later.

The sole question presented is whether the evidence authorized a finding by the jury that the insurance company had waived the provisions of forfeiture by retaining the premium notes for fifty-two days after June 8, 1933, the end of the grace period. The Second Division of this court having heretofore held, when the case was here on demurrer, that, "assuming that the policy in fact contained a provision for forfeiture for non-payment of premiums, whether or not the retention of the notes by the insurance company for fifty-two days after June 8, 1933, amounted to a waiver of forfeiture was a question for the jury," that ruling became the law of the case, and we are of the opinion that the foregoing evidence authorized the finding of the jury on the trial that the company, by retaining the premium notes for fifty-two days after June 8, 1933, and subsequently, before the due date of the notes, refusing a tender in cash of the face amount of the premium notes, waived the forfeiture with reference to the payment of premiums. Thus the insurance company, by waiving the forfeiture, was in effect saying to the insured: "Your policy is in force until this note falls due (and is unpaid)." Such conduct on the part of the insurance company estops it from enforcing the pre-existing clause in the loan contract; that is, the insurance company is precluded from setting up the forfeiture clause in the loan contract. Such a waiver (which was made for a consideration), it is true, does not change the forfeiture clause in the loan contract, but bars the insurance company from exercising it until the note falls due, which note was taken for the advance premium (or, if paid before or when due, the company is barred for the full year following, this being the time for which the advance premium would have been paid). The estoppel here is predicated on a voluntary and intelligent action, or choice, of accepting a note for the advance premium and agree-

ing to allow the policy to be in force for a definite time (for at least six months later), and thus this action would be inconsistent with a forfeiture of the same policy under a forfeiture clause in the loan contract, and the effect of the estoppel here is to prevent the party so choosing from afterward reversing the election, or disputing the state of affairs, or rights of others resulting from its original choice. We think the evidence authorized the verdict. *Yarbrough* v. *Seagraves,* 47 *Ga. App.* 436 (170 S. E. 553) ; *Blalock* v. *Empire Life Insurance Co.,* 13 *Ga. App.* 486 (79 S. E. 374) ; 14 A. L. R. 918. *Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*